UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

12 CV 1826

------------------------------------------------------------x
WIRELEZE INK CORPORATION,                :
                                          :   No.
                                          :
                    Plaintiff,            :   COMPLAINT FOR
                                          :   PATENT INFRINGEMENT
      -against-                           :
                                          :   ECF CASE
FACEBOOK, INC.; GOOGLE, INC., and         :
YOUTUBE, LLC,                             :   DEMAND FOR JURY
                                          :   TRIAL
                    Defendants.           :
------------------------------------------------------------x

## COMPLAINT

Plaintiff Wireless Ink Corporation ("Wireless Ink"), by its attorneys The Pitcock Law Group, for its Complaint against defendants Facebook, Inc., Google, Inc., and YouTube, LLC (collectively, the "Defendants") respectfully alleges as follows:

### NATURE OF THE ACTION

1. This is an action for patent infringement. Founded in 2001, Plaintiff Wireless Ink has been widely recognized as an early innovator in the field of mobile content management and social networking software. Wireless Ink is the owner of all right, title and interest in and to U.S. Patent No. 8,135,801 B2 ("the '801 patent" or "patent-in-suit") entitled "Method, Apparatus and System for Management of Information Content for Enhanced Accessibility over Wireless Communication Networks," which was duly and legally issued on March 13, 2012.

2. On information and belief, and as alleged in more detail below, Defendants have been actively infringing the '801 patent with knowledge of Wireless Ink's patent rights and without reasonable basis for believing their conduct to be lawful.

3.  One parent application to the '801 patent, Patent Application No. 10/464,526, issued as U.S. Patent No. 7,599,983 B2 ("the '983 patent,") and is the subject of litigation currently pending against defendants Facebook, Inc. and Google, Inc. in this Court, Case No. 10 Civ. 1841 (PKC). Another parent application to the '801 patent, Patent Application No. 12/548,928, issued as U.S. Patent No. 7,908,342 ("the '342 patent,"), and is the subject of litigation currently pending against all the Defendants, Case No. 11 Civ. 1751 (PKC). These cases have been consolidated for pretrial discovery.

4.  Wireless Ink provided the Defendants with notice of the patent prior to issue via email to each of the counsel for the Defendants in previous lawsuits, and through various discussions and communications in the above-pending litigations. Upon information and belief, counsel for the Defendants monitor the pending patent applications of the Plaintiff in the Patent and Trademark Office because of the above-captioned litigations.

5.  On information and belief, Defendants have purposefully and deliberately committed acts of patent infringement within the State of New York, and particularly within the Southern District of New York, and are thus liable to Wireless Ink for infringement of the patent at issue in this litigation pursuant to 35 U.S.C. § 271. Because Defendants' infringement has been and continues to be willful and deliberate, Wireless Ink is further entitled to an award of enhanced damages from this Court.

## JURISDICTION, VENUE AND JOINDER

6.  This is an action arising under the patent laws of the United States, Title 35 of the United States Code §§ 101, *et. seq.* This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (action arising under an Act of Congress relating to patents).

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).

8. Defendants are doing business within the United States, including within this Judicial District. On information and belief, Defendants have committed numerous acts of infringement in this Judicial District and throughout the United States.

9. Joinder of the Defendants in one Action is thought to be proper under 35 U.S.C. § 299, since: (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process, as alleged more fully herein; and (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

## **PARTIES**

10. Plaintiff Wireless Ink is a Delaware Corporation with its principal place of business in Bohemia, New York.

11. On information and belief, Defendant Facebook, Inc. ("Facebook") is a Delaware Corporation with its principal place of business in Palo Alto, California.

12. On information and belief, Defendant Google, Inc. ("Google") is a Delaware Corporation with its principal place of business in Mountain View, California.

13. On information and belief, Defendant YouTube, LLC is a Delaware Corporation, having its principal places of business in San Bruno, California. YouTube, LLC is a wholly-owned subsidiary of Google. Upon information and belief, YouTube, LLC is under the control of and acts as the agent of Google.

14. On information and belief, Defendants have committed acts defined as unlawful under 35 U.S.C. § 271, including in this Judicial District, as alleged more fully below.

## FACTUAL ALLEGATIONS

### A. INFRINGEMENT BY DEFENDANTS

15. As detailed below, and without prejudice to asserting other claims of the '801 patent, on information and belief, the Defendants all infringe at least claims 1, 2, 5, 6, 7, 8, 12, 13, 15 and 16 of the '801 patent, as alleged in more detail below.

#### I. Facebook's Infringement

16. Facebook allows users to manage information content over the Internet.

17. Facebook provides one or more web-based interfaces accessible to its users that are configured to permit a user to designate a plurality of other users that will share access to content with the first user. *See, e.g.*, http://www.facebook.com/help/privacy (listing the various interfaces used to control access to content on Facebook.) Sharing of content occurs in accordance with accessibility rules established by the first user.

18. Facebook generates web-based interfaces wherein access to the content at the interface is controlled in accordance with the rules established by the first user via the first interface.

19. One of the web-based interfaces used by Facebook is the desktop content management website generally available at www.facebook.com. The second web-based interface can be a mobile website (available at least m.facebook.com) which is accessible independently of the desktop content management web site via one or more mobile devices.

20. The URL identifying the first web-based interface is different from the URL identifying the second web-based interface at least when the desktop website is used to control access to content on the mobile web site, or vice versa.

21. At the various desktop and mobile web-based interfaces provided by Facebook, the interfaces are configured to permit the user to designate various data sources (such as image files). The accessibility to that content can be controlled by rules set in place by the user at that interface. *See, e.g.*, http://www.facebook.com/help/privacy/sharing-choices.

22. The other web-based interfaces for accessing that content are configured to receive data automatically that is designated by the user at the first web-based interface, and access to the content as the second interface is controlled based on the settings by the first user.

23. Content can be shared from a variety of different sources, including from the other Defendants in this case. For example, web content and images can be shared on Facebook where the data sources are from Google or YouTube. Upon information and belief, Google and YouTube actively encourage Facebook to allow use of such content, although such use violates Plaintiff's patent rights.

24. The designated data source can be a file, including (as noted above) an image file. The designated data source can be a device-captured data source, where the device-captured data source is a source of device-captured image data.

25. At the various desktop and mobile web-based interfaces provided by Facebook, the interfaces are configured to permit the user to upload information items (such as images). The accessibility to that content can be controlled by rules set in place by the user at that interface. Access to the content as the second interface is controlled based on the settings by the first user.

5

26. Information items can be uploaded from a variety of different sources, including from the other Defendants in this case. For example, image data can be shared on Facebook where the data sources are from Google or YouTube.

27. Facebook has both first and second browser based interfaces, at (for example) the desktop and mobile web sites.

28. Facebook provides a first website accessible to a user at www.facebook.com, where the user can designate a large number of data sources, such as images, as alleged above. Files can be designated from outside sources, such as from the websites of both Google and YouTube. Upon information and belief, Google and YouTube actively encourage Facebook to allow use of such content, although such use violated Plaintiff's patent rights, as alleged more fully herein.

29. Facebook generates a second web site, which specifically can be a mobile web site, which is accessible independently of the desktop web site. This second (mobile) website is configured to receive data automatically from data sources designated by users at the first (desktop) web site.

30. Thus, on information and belief, Facebook infringes at least claims 1, 2, 5, 6, 7, 8, 12, 13, 15 and 16 of the '801 patent.

## II. Google's Infringement

31. Google allows users to manage information content over the Internet.

32. Google provides one or more web-based interfaces accessible to its users that are configured to permit a user to designate a plurality of other users that will share access to content with the first user. *See, e.g.*, https://www.google.com/dashboard/b/0/?pli=1; see also https://www.google.com/settings/privacy (describing control features for content sharing on

Google); https://www.google.com/settings/plus (specific description for Google+.) Sharing of content occurs in accordance with accessibility rules established by the first user. See id.

33. Google generates web-based interfaces wherein access to the content at the interface is controlled in accordance with the rules established by the first user via the first interface.

34. One of the web-based interfaces used by Google is at the desktop content management website generally available at www.google.com (for Google+, the content management features are generally available at plus.google.com). The second web-based interface can be a mobile website which is accessible independently of the desktop content management web site via one or more mobile devices. For example, content at Google+ can be accessed at m.google.com/app/plus . . . (the specific URLs will be user dependent).

35. The URL identifying the first web-based interface is different from the URL identifying the second web-based interface at least when the desktop website is used to control access to content on the mobile web site, or vice versa.

36. At various desktop and mobile web-based interfaces provided by Google, the interfaces are configured to permit the user to designate various data sources (such as image files). For example, in Google+ a user can designate images for use in the "Stream." The accessibility to that content can be controlled by rules set in place by the user at that same interface.

37. The other web-based interfaces for accessing that content are configured to receive data automatically that is designated by the user at the first web-based interface, and access to the content as the second interface is controlled based on the settings by the first user.

38. Content can be shared from a variety of different sources, including from the other Defendants in this case. For example, web content and images can be shared on Google where the data sources are from, for example, YouTube.

39. The designated data source can be a file, such as an image file.

40. The designated data source can be a device-captured data source, where the device-captured data source is device-captured image data, as mentioned above.

41. At the various desktop and mobile web-based interfaces provided by Google, the interfaces are configured to permit the user to upload information items (such as image files). The accessibility to that content can be controlled by rules set in place by the user at that interface. Access to the content as the second interface is controlled based on the settings by the first user.

42. Information items can be uploaded from a variety of different sources, including from YouTube. For example, image files can be shared on Google where the data sources are from YouTube.

43. Google has both first and second browser based interfaces, at (for example) the desktop and mobile web sites.

44. Google provides a first website accessible to a user at www.google.com (including plus.google.com), where the user can designate a large number of data sources, such as image files. Files can be designated from outside sources, such as from YouTube.

45. Google generates a second web site, specifically a mobile web site, which is accessible independently of the desktop web site. This second (mobile) website is configured to receive data automatically from data sources designated by users at the first (desktop) web site.

46. Thus, on information and belief, Google infringes at least claims 1, 2, 5, 6, 7, 8, 12, 13, 15 and 16 of the '801 patent.

### III. YouTube's Infringement

47. YouTube allows users to manage information content over the Internet.

48. YouTube provides one or more web-based interfaces accessible to its users that are configured to permit a user to designate a plurality of other users that will share access to content with the first user. A user can select the groups or particular people that will have access to a particular video, for example. Also, if a YouTube user uses a Google account, then the privacy settings for content at YouTube can be controlled at the Google dashboard.

49. YouTube generates web-based interfaces wherein access to the content at the interface is controlled in accordance with the rules established by the first user via the first interface. YouTube also specifically permits and encourages sharing its web content at the Facebook web site. *See, e.g.,* http://www.youtube.com/account_sharing.

50. One of the web-based interfaces used by YouTube is at the desktop content management website generally available at www.youtube.com. The second web-based interface can be at a mobile website which is accessible independently of the desktop content management web site via one or more mobile devices. For example, content can be accessed at m.youtube.com.

51. The URL identifying the first web-based interface is different from the URL identifying the second web-based interface at least when the desktop website is used to control access to content on the mobile web site, or vice versa.

52. At various desktop and mobile web-based interfaces provided by YouTube, the interfaces are configured to permit the user to designate various data sources for

9

images or videos. The accessibility to that content can be controlled by rules set in place by the user.

53. The other web-based interfaces for accessing that content are configured to receive data automatically that is designated by the user at the first web-based interface, and access to the content as the second interface is controlled based on the settings by the first user.

54. The designated data source can be a file, whether the file can be a video or image file.

55. The designated data source can be a device-captured data source, where the device-captured data source is a source of device-captured video data or device-captured image data.

56. At the various desktop and mobile web-based interfaces provided by YouTube, the interfaces are configured to permit the user to upload information items (such as photos and videos). The accessibility to that content can be controlled by rules set in place by the user at that interface. Access to the content as the second interface is controlled based on the settings by the first user.

57. Information items can be uploaded from a variety of different sources, including from the other Defendants in this case. For example, videos can be shared on YouTube where the data sources are from YouTube.

58. YouTube has both first and second browser based interfaces, at (for example) the desktop and mobile web sites.

59. YouTube provides a first website accessible to a user at www.youtube.com , where the user can designate a large number of data sources, such as photo and video files.

60. YouTube generates a second web site, specifically a mobile web site, which is accessible independently of the desktop web site. This second (mobile) website is configured to receive data automatically from data sources designated by users at the first (desktop) web site.

61. Thus, on information and belief, YouTube infringes at least claims 1, 2, 5, 6, 7, 8, 12, 13, 15 and 16 of the '801 patent.

### FIRST CLAIM FOR RELIEF
### (Infringement of the '801 Patent)

62. Wireless Ink repeats and realleges paragraphs 1 through 61 above as though fully set forth herein.

63. On information and belief, Wireless Ink alleges that Defendants have directly infringed and are currently directly infringing claims of the '801 patent either literally or under the doctrine of equivalents, both individually and/or jointly and severally and/or have actively induced and are actively inducing others to infringe the '801 patent, by committing acts defined in 35 U.S.C. § 271 as unlawful. Indeed, as alleged above in detail, both Google and/or YouTube provide their content in a manner to induce Facebook to share their content at its websites. All such acts have been without authority or license from Wireless Ink.

64. On information and belief, Defendants' direct infringement and inducement of infringement of the '342 patent has been and continues to be willful and deliberate, and without regard for Wireless Ink's rights in the '801 patent.

## DEMAND FOR JURY TRIAL

Wireless Ink respectfully demands a trial by jury for all issues so triable in this action.

Dated: New York, New York
March 13, 2012

Respectfully submitted,

By: _____
Jeremy S. Pitcock (JP-4954)

**THE PITCOCK LAW GROUP**
1501 Broadway, 12th Floor
New York, NY 10036
(646) 571-2237

**Attorneys for Wireless Ink Corporation**